**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| DONALD BOSMAN and REGINA BOSMAN,<br><br>Plaintiffs,<br><br>v.<br><br>OFFICER REBECCA EWING, in her individual and official capacity; CITY OF MYRTLE BEACH; CITY OF MYRTLE BEACH POLICE DEPARTMENT; JARROD MACKIN, SHAWN GULLEDGE, and DONALD HEEREN, in their individual and official capacities,<br><br>Defendants. | Case No. 4:23-cv-04919-JD-KDW<br><br>ORDER AND OPINION |

This matter is before the Court on the Report and Recommendation ("Report" or "R&R") of United States Magistrate Judge Kaymani D. West concerning Defendants' Motion for Summary Judgment. (DE 75; DE 103.) Plaintiffs Donald and Regina Bosman timely filed objections (DE 107), and Defendants filed a reply (DE 110). After de novo review of the specifically objected-to portions of the Report and review of the remaining portions for clear error, the Court adopts the Report as modified below, grants summary judgment on Plaintiffs' federal claims, and declines to exercise supplemental jurisdiction over the remaining state-law claims under 28 U.S.C. § 1367(c)(3).

## A. Background

The Report sets forth the record in detail. (DE 103 at 2–10.) The Court summarizes only the facts necessary to place the objections in context, viewing disputed evidence in Plaintiffs' favor where material to the present review.

### 1. Factual Background

On October 1, 2022, Beau, the Bosmans' Belgian Malinois, became involved in an encounter with two dogs owned by Stephanie Rodriguez near a public beach access in Myrtle Beach. Rodriguez reported that an unleashed dog charged her dogs and grabbed them before Donald Bosman intervened. Donald Bosman described the incident differently: he stated that Beau broke loose from his leash, approached the other dogs to play, and made contact that Bosman characterized as a "nip." Rodriguez initially did not believe her dogs were injured but later reported bite wounds to one dog and veterinary treatment. (DE 103 at 2–4; *see also* DE 75-1 at 2–5.)

Defendant Rebecca Ewing, a Myrtle Beach Animal Control Officer, followed up with Rodriguez on October 5. Ewing obtained a written statement and photographs and was already familiar with Beau from a 2021 incident in which Beau bit a person on the hand. Regina Bosman later explained that the 2021 bite occurred after the person reached from a vehicle toward Beau's head. (DE 103 at 3–5; DE 75-5 at 31.) Based on the October 1 report, the reported injuries, and Beau's prior history, Ewing obtained courtesy summonses charging the Bosmans with harboring a vicious or dangerous animal and a search warrant authorizing Beau's seizure from the Bosmans' residence. (*Id*. at 5–6, 20.)

On October 6, Ewing and Officers Jarrod Mackin, Shawn Gulledge, and Donald Heeren went to the Bosmans' residence. Plaintiffs describe four to five uniformed officers in tactical gear inside the gated property, patrol vehicles blocking vehicular egress, officers standing with hands near holstered weapons, repeated statements that Beau would be taken or euthanized, and Ewing's refusal to display the warrant. The encounter lasted more than an hour and became emotional. The officers did not enter the residence. Donald Bosman communicated with counsel by telephone, and, after further discussion, Regina Bosman brought Beau outside and placed him in Ewing's patrol vehicle. (DE 103 at 6–10; DE 107 at 4–6.) Ewing later testified that she did not "use, execute, activate, implement, or serve" the warrant because she brought Beau outside. (Ewing Dep. 156:19–23, DE 91-3 at 157.)

The Bosmans appeared in municipal court on October 11. Regina Bosman testified that Ewing separately agreed to dismiss her charge and allow her to retrieve Beau if she left Myrtle Beach with him, while directing her not to discuss the arrangement with Donald. Donald Bosman testified that Ewing then asked how he intended to plead, told him that the arrangement with Regina would go "out the window" if he did not plead guilty, and accepted his guilty plea and fine without a judge physically participating in the interaction. (D. Bosman Affm. ¶ 20, DE 92-1 at 5.) Donald later obtained counsel, reopened the disposition, and the charge ultimately was nolle prossed. Beau was returned subject to municipal-court restrictions. (DE 103 at 6–7.)

### 2. Procedural Background

Plaintiffs filed this action under 42 U.S.C. § 1983 and South Carolina law. The Complaint asserts false arrest, unreasonable search and seizure, malicious prosecution, deprivation of due process, First Amendment violations, municipal liability, and state-law tort claims. (DE 1-1 at 7–11.) Defendants moved for summary judgment (DE 75); Plaintiffs opposed the motion and submitted supporting materials (DE 91; DE 92); the Magistrate Judge issued the Report (DE 103); Plaintiffs objected (DE 107); and Defendants replied (DE 110).

## B. Report and Recommendation

The Report recommends summary judgment on Plaintiffs' Fourth Amendment claims. It concludes that the October 6 encounter did not amount to an arrest or seizure of the Bosmans because they were not physically restrained, moved between the residence and driveway, used their telephones, and spoke with counsel. (DE 103 at 13-18.) As to Beau, the Report concludes that the warrant was supported by probable cause, that Plaintiffs had not shown a material falsehood or omission under *Franks v. Delaware*, 438 U.S. 154 (1978), and that the officers' statements concerning seizure of Beau reflected warrant authority rather than an unlawful threat. (DE 103 at 18–25.) It, therefore, also recommends summary judgment on malicious prosecution because the relevant legal process was supported by probable cause. (*Id.* at 25–26.)

The Report separately recommends summary judgment on the Fourteenth Amendment and First Amendment claims. It reasons that the Fourth Amendment supplies the governing framework for the search-and-seizure allegations, finds

insufficient evidence for a distinct due-process fabrication theory or an independently unconstitutional municipal-court procedure, and concludes that the alleged restrictions on spousal communication did not amount to actionable interference with intimate association. (*Id*. at 26–31.)

On municipal liability, the Report concludes that Plaintiffs did not establish that any constitutional injury resulted from a City policy, final policymaker, widespread custom, or deliberately indifferent training deficiency. (*Id*. at 31–34.) It also concludes that the individual officers are entitled to qualified immunity, relying in part on the unsettled law governing seizures of dangerous animals and *Anderson v. City of Camden*, No. 3:10-cv-2547-JFA, 2011 WL 4703104 (D.S.C. Oct. 5, 2011), aff'd, 470 F. App'x 207 (4th Cir. 2012). (DE 103 at 34–35.)

Finally, because the Report recommends disposing of every federal claim, it recommends that the Court decline supplemental jurisdiction over the remaining state-law claims under § 1367(c)(3). It alternatively addresses those claims on the merits. (DE 103 at 35–41.) Plaintiffs' objections specifically challenge seven federal issues but state generally that they do not abandon arguments made in their summary judgment opposition concerning other matters, including state law. (DE 107 at 3–14.)

## C. Legal Standard

### 1. Report and Recommendation

A magistrate judge's recommendation carries no presumptive weight, and the district court retains responsibility for the final determination. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Under 28 U.S.C. § 636(b)(1), the Court reviews de novo

any portion of the Report to which a specific objection is made. Absent a timely specific objection, the Court need only "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Insurance Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

*Elijah v. Dunbar* explains that specificity, not novelty, controls. 66 F.4th 454, 460–61 (4th Cir. 2023). An objection must identify the challenged finding or recommendation "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Id.* at 460 (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). A general objection does not require the district court to relitigate the entire case and is reviewed only for clear error. *Id.* at 460–61.

**2. Summary Judgment**

Summary judgment is appropriate when the movant shows "that there is no genuine dispute as to any material fact" and that the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is material only if it might affect the outcome under governing law, and it is genuine only if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In conducting that inquiry, the Court views the evidence and draws all reasonable inferences in the nonmovant's favor, but the nonmovant must identify evidence sufficient to permit a reasonable jury to return a verdict in her favor. *See id.* at 248, 255; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

**3. Qualified Immunity**

Qualified immunity shields an official from individual-capacity damages unless the plaintiff shows both a constitutional violation and that the right was clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). Courts may address either prong first. *Id.* at 236. A right is clearly established only when existing precedent places the constitutional question "beyond debate," and the inquiry must be particularized to the conduct at issue rather than framed at a high level of generality. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011); *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam). Liability also is defendant specific: "each Government-official defendant, through the official's own individual actions," must have violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

**4. Municipal Liability**

A municipality is liable under § 1983 only for its own policy or custom, not under respondeat superior. *Monell v. Department of Social Services*, 436 U.S. 658, 691, 694 (1978). Municipal liability may arise from an express policy, a decision of a final policymaker, a deliberately indifferent omission such as failure to train or supervise, or a practice so persistent and widespread as to constitute a custom with the force of law. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003); *see also Misjuns v. City of Lynchburg*, 139 F.4th 378, 384 (4th Cir. 2025). The municipal action must be the "moving force" behind the injury, with a direct causal link between the municipal action and the deprivation of federal rights. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

## D. Discussion

Plaintiffs lodge seven specific objections. The first three concern the October 6 encounter, Beau's seizure and the warrant, and malicious prosecution. The fourth through sixth concern the First Amendment, due process, and *Monell* liability. The seventh challenges qualified immunity. (DE 107 at 3–13.) Plaintiffs also state generally that they do not abandon the remaining arguments in their opposition. (*Id.* at 13–14.) The Court reviews the seven specific objections de novo and reviews portions of the Report not specifically challenged for clear error. *See Elijah*, 66 F.4th at 460–61.

Several objections assert that the Report resolved factual disputes against Plaintiffs. Defendants answer that the body-camera recordings resolve the material disputes. (DE 110 at 2–3.) The Court need not decide whether every characterization in Plaintiffs' account is conclusively contradicted by video. Where the legal sufficiency of a claim can be resolved while crediting the disputed facts identified in the objections, the Court does so.

### 1. Fourth Amendment Seizure of Plaintiffs

Plaintiffs first object to the Report's conclusion that they were not seized during the October 6 encounter. They rely on the number and positioning of officers and patrol vehicles, and tactical gear. Plaintiffs also allege positioning of officers' hands near holstered weapons, the duration and tone of the encounter, statements concerning Beau's seizure or euthanasia, Ewing's refusal to display the warrant, and repeated assertions that compliance ultimately would be compelled. (DE 107 at 3–7.) Defendants emphasize the absence of physical restraint or drawn weapons, Plaintiffs'

movement between the house and driveway, and their ability to use their telephones and contact counsel. (DE 110 at 2–3; DE 103 at 16–18.)

The absence of physical restraint is not dispositive. A seizure may occur through a show of authority when, considering the totality of the circumstances, a reasonable person would not feel free to terminate the encounter. *See United States v. Mendenhall*, 446 U.S. 544, 553–54 (1980). The Fourth Circuit likewise asks first whether and when a seizure occurred and, if so, whether it was justified. *See Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 460 (4th Cir. 2013).

The Court need not resolve the threshold dispute. For purposes of summary judgment, it assumes that the officers' presence, the alleged restriction of vehicular egress, the duration and tone of the encounter, and the repeated assertion of warrant authority constituted a show-of-authority seizure of the Bosmans. The Court, therefore, does not adopt the Report's categorical conclusion that no seizure occurred.

That assumption does not require denial of summary judgment. Plaintiffs' pleaded false arrest claim alleges arrest or confinement without probable cause. (DE 1-1 at 7; DE 103 at 13.) The courtesy summonses were supported by probable cause to believe the Bosmans were keeping or harboring Beau in violation of the City ordinance, based on Rodriguez's report and identification, the later-reported injuries and photographs, Beau's prior history, and the Bosmans' ownership and custody of Beau. (DE 103 at 14-15 & n.9, 20–23.)

To the extent Plaintiffs contend that the manner or duration of the October 6 encounter constituted an independently unreasonable temporary detention, the Court need not decide that merits question. As of October 2022, Plaintiffs identify no

Supreme Court or Fourth Circuit decision placing beyond debate that officers violate the Fourth Amendment when they obtain property specifically identified in a judicial search warrant, and they:

- remain at the owners' residence for more than an hour,
- allegedly block vehicular egress and speak in compulsory terms,
- but do not enter the residence,
- physically restrain the owners,
- draw their weapons,
- prevent movement between the home and driveway, or
- prevent contact with counsel.

The general show-of-authority cases cited by Plaintiffs identify when a seizure may occur; they do not clearly establish that the particular detention alleged here was unreasonable. *See al-Kidd*, 563 U.S. at 741–42.

Accordingly, the Court sustains Plaintiffs' first objection only to the extent it declines to adopt the Report's categorical no-seizure conclusion. The objection does not alter the recommended disposition.

**2. Seizure of Beau, the Warrant, and Probable Cause**

Plaintiffs' first and second objections overlap as to Beau. They argue that his surrender was coerced; that Ewing's testimony that she did not "use, execute, activate, implement, or serve" the warrant prevents Defendants from relying on it; that material falsehoods and omissions defeated probable cause; and that S.C. Code Ann. § 47-3-750 required a separate court order. They also rely on curtilage principles, alleged noncompliance with departmental warrant procedures, and the

later failure to return the warrant. (DE 107 at 5–10, 12-13; DE 91 at 16–17.) Defendants maintain that the warrant existed, was supported by probable cause, and that § 47-3-750(B) provided additional state-law authority. (DE 110 at 3–4.)

**a. Consent, Coercion, and the Existing Warrant**

Plaintiffs are correct that the seizure cannot be sustained as a consensual surrender. An officer's announcement that he possesses a warrant creates a situation "instinct with coercion." *Bumper v. North Carolina*, 391 U.S. 543, 550 (1968). The Fourth Circuit accordingly treats acquiescence to asserted law-enforcement authority as materially different from voluntary consent. *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001); *see also United States v. Robertson*, 736 F.3d 677, 680–81 (4th Cir. 2013). The Report itself recognized that the alternatives presented to the Bosmans "do not really sound like options at all." (DE 103 at 24.) The Court, therefore, does not characterize Regina Bosman's delivery of Beau as voluntary consent.

That conclusion does not eliminate the judicial authority that existed before the officers arrived. Ewing had obtained a search warrant specifically authorizing seizure of Beau from the residence. (DE 103 at 20.) *Bumper* and *Trulock* defeat consent as an independent justification. That said, they do not establish that officers must ignore an otherwise valid warrant because an owner acquiesces to the authority it confers.

Plaintiffs argue that the warrant must be treated as though it "did not exist" because Ewing did not serve or display it and later said she did not execute it. (DE 107 at 7.) But the Fourth Amendment does not require an officer to serve a search warrant before executing it, carry the warrant during the search, or leave a copy with

the property owner. *See United States v. Hurwitz*, 459 F.3d 463, 472 (4th Cir. 2006). Ewing's terminology does not retroactively extinguish the judicial authorization. The officers did not enter the home because Beau was brought outside after they invoked that authority.

Nor does *United States v. Moses*, 540 F.3d 263, 269–70 (4th Cir. 2008), require a different conclusion. Plaintiffs cite *Moses* for the rule that probable cause alone ordinarily does not justify a warrantless entry into a home absent exigent circumstances. (DE 107 at 7.) Here, the officers had obtained a judicial warrant and did not enter the home. Plaintiffs' curtilage authorities likewise establish the home's heightened protection but do not show that an existing warrant ceased to provide authority because officers first sought to obtain Beau without entering. *See Florida v. Jardines*, 569 U.S. 1, 6–7 (2013); *United States v. Dunn*, 480 U.S. 294, 300 (1987); *Oliver v. United States*, 466 U.S. 170, 180 (1984).

Plaintiffs also emphasize that Ewing did not later return the warrant or provide the inventory they contend was required and that Policy 239H required supervisory review or signature. (DE 107 at 12–13; DE 91 at 16–17; DE 103 at 24 n.12.) Those assertions concern post-issuance or departmental procedures. Plaintiffs identify no Fourth Amendment authority holding that a same-day seizure becomes unauthorized because of a later return defect, and a violation of state or local procedure does not by itself establish a federal constitutional violation. *See Altman v. City of High Point*, 330 F.3d 194, 208–09 (4th Cir. 2003).

The Court thus modifies the Report's consent analysis but not its recommended disposition.

### b. *Franks* and Probable Cause

Plaintiffs next argue that Ewing obtained the warrant through materially false or misleading information. Their principal challenge is Ewing's statement that Beau had a documented history and propensity to attack "unprovoked." They contend that Ewing knew the 2021 human-bite incident occurred after the person reached toward Beau's head. They also contend that Rodriguez initially reported no injury and did not want charges. Plaintiffs also assert that Ewing did not interview the Bosmans, independently confirm Beau's identity, or interview the neighbor said to have information; and that evidence of Ewing's animus supports an inference of recklessness. (DE 107 at 7–9 & n.2; *see* DE 91 at 12–15.)

Under *Franks v. Delaware* and *Miller v. Prince George's County*, an officer violates the Fourth Amendment by intentionally or recklessly including a false statement or omitting a fact when the falsehood or omission is material to probable cause. *See Franks*, 438 U.S. 154, 155–56 (1978); *see also Miller*, 475 F.3d 621, 627–28 (4th Cir. 2007). Materiality is tested by "excis[ing] the offending inaccuracies and insert[ing] the facts recklessly omitted" and asking whether the corrected affidavit still establishes probable cause. *Miller*, 475 F.3d at 628 (citation omitted).

The Court applies that test without resolving Ewing's state of mind. It assumes that the use of "unprovoked" was reckless and that the facts Plaintiffs identify should have been disclosed. It, therefore. treats the affidavit as though it omitted the challenged characterization and added that the 2021 bite followed the person's reaching toward Beau's head and that Rodriguez initially did not observe an injury but later reported wounds and supplied photographs. Because the Court assumes the

intent/recklessness component in Plaintiffs' favor, it also need not decide what additional inference, if any, Plaintiffs' evidence of Ewing's alleged animus would support. (*See* DE 107 at 8–9 n.2.)

Even as corrected, the affidavit established probable cause. It described the October 1 incident at the public beach access, Rodriguez's identification of Beau and his owner, photographs of significant bite wounds to Rodriguez's dog, and Beau's documented prior incident involving injury to a human. (DE 103 at 20–23; *see* DE 75-1 at 6–7.) The omitted context weakens the inference that the earlier bite was unprovoked, but it does not eliminate the October 1 report, identification, or documented injuries. Rodriguez's initial failure to observe an injury and her later discovery of wounds also are not mutually exclusive.

The City ordinance defined a vicious or dangerous animal through multiple considerations rather than a single dispositive fact. (DE 103 at 5, 20–23.) The corrected information therefore provided a substantial basis for probable cause to believe Beau fell within the ordinance and would be found at the Bosmans' residence.

Plaintiffs' reliance on *Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546 (4th Cir. 2017), does not change the result. In *Humbert*, the omitted information undermined the central identification supporting the arrest: the victim could not positively identify the plaintiff, and suggestive police conduct had contributed to the earlier purported identification. *Id.* at 557–58. Here, Rodriguez identified the dog and owner involved in the October 1 incident, and the asserted omissions do not eliminate that identification or the reported injuries.

Likewise, Ewing's failure to pursue every additional interview does not itself negate probable cause. The Fourth Circuit distinguishes a failure to obtain known or readily available information that would negate probable cause from a failure to pursue merely potential exculpatory leads. *See Wadkins v. Arnold*, 214 F.3d 535, 541 (4th Cir. 2000). Officers need not "exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established." *Id.* Donald Bosman's own account, for example, disputes Beau's intent and the nature of the contact but acknowledges Beau's presence and that he broke loose at the beach access. (DE 103 at 2–3.)

Accordingly, the corrected affidavit remained supported by probable cause. The Court need not decide whether Ewing actually acted intentionally or recklessly.

**c. S.C. Code Ann. § 47-3-750**

Plaintiffs also argue that South Carolina law required a separate "court order," not merely a search warrant, because Beau was on their premises on October 6. (DE 107 at 9–10; DE 91 at 16–17.) Defendants answer that this reading overlooks § 47-3-750(B), which addresses probable cause to believe a dangerous animal is being harbored or housed in violation of § 47-3-730, including the restraint requirement when such an animal goes beyond its owner's premises. (DE 110 at 3–4.)

Section 47-3-750 contains distinct provisions. Subsection (A) permits a petition for a judicial seizure order upon probable cause to believe specified provisions of the Dangerous Animals Act are being violated. Subsection (B) separately provides that an officer with probable cause to believe a dangerous animal is being harbored or housed in violation of § 47-3-730 "may seize and impound the dangerous animal while

the trial is pending." S.C. Code Ann. § 47-3-750(A)-(B). Plaintiffs' premise that subsection (A) necessarily and exclusively governed because Beau was back on the Bosmans' premises on October 6 does not account for the October 1 public beach incident on which Defendants rely. (DE 103 at 2–3; DE 110 at 3–4.)

The nonprecedential district court decision in *Anderson v. City of Camden* had read subsection (B) to permit seizure where probable cause existed to believe § 47-3-730 had been violated. 2011 WL 4703104, at *5. The Court does not treat *Anderson* as binding or as the source of federal constitutional law, and the Court need not definitively resolve the ultimate state law question here. For the federal claims, it is enough that Plaintiffs' assertion that subsection (A) plainly and exclusively governed is not compelled by the statutory structure and that a violation of state procedure, even if established, would not automatically establish a Fourth Amendment violation. *See Altman*, 330 F.3d at 208–09.

Plaintiffs' second objection, therefore, warrants fuller analysis than the Report provided, but it does not alter the recommended disposition.

**3. Malicious Prosecution**

Plaintiffs' third objection is derivative of the first two: they contend that the Report's malicious-prosecution analysis fails because seizure and probable cause remain disputed. (DE 107 at 10; DE 103 at 25–26.) A § 1983 malicious prosecution claim is a Fourth Amendment claim requiring a seizure pursuant to legal process unsupported by probable cause and a favorable termination. *See Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012).

The Court need not rely on the Report's no-seizure conclusion and assumes favorable termination for purposes of this issue. The claim still fails because the summonses were supported by probable cause. The same core information supporting the warrant—Rodriguez's report and identification, the later-documented injuries, Beau's history, and the Bosmans' ownership and custody—supplied probable cause for the municipal charges. The challenged "unprovoked" characterization was not necessary to that conclusion. Plaintiffs, therefore, cannot establish the absence-of-probable-cause element, and the third objection is overruled.

**4. First Amendment**

Plaintiffs' fourth objection asserts that Ewing interfered with spousal communication and conditioned a favorable disposition on silence and Donald Bosman's guilty plea. They characterize the evidence as supporting both intimate-association and petition interference. (DE 107 at 10–11; *see* DE 91 at 27–28; DE 1-1 at 10.) Defendants respond that the alleged statements did not produce a cognizable First Amendment injury. (DE 110 at 5.)

Marriage is among the intimate human relationships afforded substantial constitutional protection. *See Roberts v. United States Jaycees*, 468 U.S. 609, 617–20 (1984). But the precise constitutional contours of a separate intimate-association claim are unsettled in this Circuit. For instance, *Rucker v. Harford County* described competing approaches, one requiring state action directed at the family relationship itself and another allowing a derivative claim based on injury to a family member. But the Court expressly declined to decide whether either theory recognized an independent constitutional relational right. 946 F.2d 278, 282–83 (4th Cir. 1991).

Viewed favorably to Plaintiffs, the evidence includes an alleged instruction that one spouse not disclose case-specific information to the other, coupled with an alleged threat that the disposition offered to Regina would be withdrawn unless Donald pleaded guilty. The Court, therefore, does not adopt a categorical conclusion that the evidence could never implicate intimate association. It assumes without deciding that the alleged statements sufficiently burdened the marital relationship to satisfy the constitutional merits inquiry.

The individual capacity damages claim against Ewing nevertheless fails under qualified immunity. As of October 2022, neither the Supreme Court nor the Fourth Circuit had clearly established that the case-specific marital-communication restriction and plea-related condition alleged here violated an independent constitutional right of intimate association. *Rucker* itself had reserved the underlying doctrinal issue. Existing precedent, therefore, did not place the constitutionality of Ewing's particular alleged conduct beyond debate. *See al-Kidd*, 563 U.S. at 741.

The objection does not identify comparable conduct by Mackin, Gulledge, or Heeren. The Report notes that those officers were not involved in the events beyond the October 6 encounter. (DE 103 at 12 n.7.) Because § 1983 requires each official's own individual actions to violate the Constitution, they cannot be held individually liable for Ewing's alleged municipal court statements. *See Iqbal*, 556 U.S. at 676.

Plaintiffs also invoke the right to petition or seek redress. (DE 107 at 10–11; DE 1-1 at 10.) Even assuming that contacting counsel and seeking judicial relief constitute protected petition activity, Plaintiffs cite no pre-October 2022 authority clearly establishing that the alleged case-specific statements by Ewing—including

the plea-related pressure and alleged discouragement of consultation—violated the Petition Clause in these circumstances. Donald Bosman in fact retained counsel, obtained reopening of his disposition, and secured a nolle prosequi. (DE 103 at 7.) The Court does not treat that later relief as an exhaustion requirement. Rather, it confirms only that the record does not present a clearly established Petition Clause violation attributable to these individual Defendants.

Accordingly, Plaintiffs' fourth objection does not alter summary judgment. The Court modifies the Report by resolving the intimate-association theory on qualified-immunity and personal-participation grounds rather than by categorically holding that the alleged restriction could not implicate the protected marital relationship. Any municipal or official-capacity theory fails for the *Monell* reasons addressed below.

**5. Fourteenth Amendment Due Process**

Plaintiffs' fifth objection argues that the Report improperly rejected evidence of coercive and conscience-shocking conduct. They rely on the October 6 seizure of Beau and on the October 11 municipal-court interaction, including Ewing's alleged plea-related pressure, acceptance of Donald's plea, and communication of the fine without a judge physically participating. (DE 107 at 11; *see* DE 91 at 18–20.) Defendants respond that the record reflects constitutionally adequate process and ordinary municipal court procedures. (DE 110 at 5–7.)

**a. Search-and-Seizure Conduct**

To the extent this substantive-due-process theory repackages the October 6 seizure of Plaintiffs or Beau, the Fourth Amendment supplies the governing

constitutional standard. When a particular Amendment provides an explicit source of protection against the challenged governmental conduct, "that Amendment, not the more generalized notion of substantive due process," governs. *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion)); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989). The Court, therefore, addresses the coercion surrounding the October 6 seizure under the Fourth Amendment rather than as an additional substantive-due-process claim.

**b. Fabrication or Omission of Evidence**

The Report also rejected a due-process theory based on fabricated or omitted evidence. (DE 103 at 27–28.) Plaintiffs' fifth objection does not separately develop that theory, although their second objection and general preservation statement rely on the same alleged warrant misstatements and omissions. (DE 107 at 7–9, 11, 13–14.) To the extent those allegations are intended to support a distinct Fourteenth Amendment fabrication claim, the Court assumes for present purposes that Plaintiffs can identify disputed evidence relevant to the claim.

The individual Defendants nonetheless are entitled to qualified immunity on that distinct theory. Before October 2022, the Fourth Circuit had recognized a due-process right not to be deprived of liberty through fabricated evidence in cases involving convictions or comparable liberty deprivations. *See Washington v. Wilmore*, 407 F.3d 274, 282–83 (4th Cir. 2005); *see also Massey v. Ojaniit*, 759 F.3d 343, 354 (4th Cir. 2014). In *Harris v. Town of Southern Pines*, decided in 2024, the Fourth Circuit described the elements of a Fourteenth Amendment fabrication claim and

expressly observed that it previously had "never expressly held, one way or the other," whether such claims were available to plaintiffs who were never convicted. 110 F.4th 633, 645–47 & n.6 (4th Cir. 2024).

The procedural posture here did not fall within a clearly established pre-October 2022 rule: Regina's charge was dismissed; Donald's initial guilty disposition was reopened and ultimately vacated in favor of a nolle prosequi; and neither Plaintiff alleges pretrial detention caused by the challenged evidence. Plaintiffs identify no then-existing Supreme Court or Fourth Circuit decision placing beyond debate that the alleged fabrication or omission, in these circumstances, created an independent Fourteenth Amendment damages claim. Ewing is, therefore, entitled to qualified immunity on that theory, and Plaintiffs identify no fabrication or omission attributable to Mackin, Gulledge, or Heeren.

**c. Municipal-Court Procedure**

Plaintiffs separately contend that Ewing "usurped" the role of a judge by receiving Donald Bosman's plea and setting or communicating the fine while simultaneously serving as the complaining officer. (DE 107 at 11; DE 91 at 18–20.) The Report relied in part on then-Chief Amy Prock's testimony concerning municipal practice. (DE 103 at 28–29.) The Court does not treat Chief Prock's description of practice, or Plaintiffs' expert's contrary view of police practice, as defining federal due process.

Instead, the Court assumes Plaintiffs' factual account that Ewing personally received Donald's plea and communicated the fine without a judge physically participating in that interaction. Even on that assumption, Plaintiffs identify no

Supreme Court or Fourth Circuit authority establishing that Ewing's particular role amounted to the unconstitutional adjudication of a contested charge rather than the administrative acceptance or communication of a disposition under the municipal procedure reflected in the record. Donald later obtained judicial reopening through counsel, and the charge was nolle prossed. (DE 103 at 7.) Again, that later process is not treated as an exhaustion requirement; it is relevant only to the nature of the procedure at issue.

At minimum, no precedent existing in October 2022 placed beyond debate that an officer performing the role attributed to Ewing under these circumstances personally violated federal due process. Ewing is therefore entitled to qualified immunity on this theory, even assuming a constitutional deficiency. Plaintiffs identify no evidence that Mackin, Gulledge, or Heeren participated in the October 11 municipal-court interaction. (DE 103 at 12 n.7.) Plaintiffs' fifth objection does not alter the recommended disposition.

**6. Municipal Liability**

Plaintiffs' sixth objection challenges summary judgment for the City under *Monell*. They rely on Mourtgos's expert opinions, Ewing's testimony concerning her training and understanding of warrant procedures, her alleged failure to follow Policy 239H, and Chief Prock's testimony concerning supervisory requirements, warrant procedures, court practice, and discipline. (DE 107 at 12; DE 91 at 28–29; DE 103 at 31–34.) Defendants respond that evidence of isolated deficient training or individual misconduct does not establish municipal liability. (DE 110 at 7–8.)

Consistent with the summary judgment standard, the Court assumes for purposes of this objection that Plaintiffs can prove an underlying constitutional violation, that Ewing departed from Policy 239H in the respects Plaintiffs assert, and that their expert is correct that Ewing personally was inadequately trained in some relevant respect. The dispositive question is whether that evidence permits a reasonable jury to attribute the assumed constitutional deprivation to the City itself.

It does not. Plaintiffs identify no express unconstitutional policy; they invoke Policy 239H because Ewing allegedly failed to follow it, not because the policy itself commands unconstitutional conduct. Nor do they show that Ewing possessed final policymaking authority in the relevant field or that any authorized final policymaker made or ratified the challenged seizure or municipal-court decisions. The authority to make an individual implementing decision does not, by itself, establish final policymaking authority. *See Misjuns*, 139 F.4th at 385. And ratification requires an authorized policymaker to approve the subordinate's decision and its basis. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion). Chief Prock's testimony describing departmental rules or practices, without evidence that a final policymaker reviewed and approved the challenged constitutional decision and its basis, does not establish ratification.

The record likewise does not establish a persistent and widespread custom. Plaintiffs identify the investigation, warrant, seizure, and municipal proceedings involving themselves, but no comparable series of animal-control seizures, warrant incidents, or citizen complaints from which a jury could infer a City-wide practice with the force of law. A custom requires more than isolated conduct. The duration

and frequency of the practice must support actual or constructive knowledge by policymakers. *See Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 402–03 (4th Cir. 2014). The Fourth Circuit has reiterated that a plaintiff's own incident ordinarily does not establish a persistent and widespread custom. *See Misjuns*, 139 F.4th at 386; *see also Johnson v. Baltimore City*, 163 F.4th 808, 822–23 (4th Cir. 2026). This conclusion concerns municipal attribution; it does not reject Plaintiffs' account of what happened to them.

Plaintiffs' principal remaining theory is failure to train or supervise. That theory requires deliberate indifference, not simply evidence that an individual officer would have benefited from more or better training. *See City of Canton v. Harris*, 489 U.S. 378, 388–91 (1989). Deliberate indifference is a "demanding standard" requiring proof that municipal policymakers knew or should have known that their omission was likely to cause constitutional injury and nevertheless disregarded the risk. *Mullen v. Town of Sunset Beach*, 175 F.4th 466, 472–73 (4th Cir. 2026). Ordinarily, a pattern of similar constitutional violations supplies the necessary notice. *See id.* at 473–74.

Plaintiffs' expert criticizes Ewing's individual training and performance, and Plaintiffs point to testimony they say demonstrates broader supervisory weakness. (DE 91 at 28–29; DE 107 at 12.) But they identify no pattern of prior similar constitutional violations placing policymakers on notice that the City's training or supervision predictably produced unlawful searches or seizures, and they do not identify a municipal training choice whose unconstitutional consequence was so obvious that a prior pattern was unnecessary under *Canton*. Even accepting

Plaintiffs' criticisms of Ewing and the Department, the evidence does not permit a reasonable jury to find the deliberate municipal choice and direct causal link required by *Brown*, 520 U.S. at 404–05.

Accordingly, the Court overrules Plaintiffs' sixth objection.

**7. Qualified Immunity as to Beau's Seizure**

Plaintiffs' seventh objection challenges the Report's qualified-immunity analysis concerning Beau's seizure. They argue, among other things, that the Report relied too heavily on the nonprecedential and factually distinguishable *Anderson* decision. Plaintiffs also contend that Beau had not repeatedly escaped and no magistrate pickup order existed here. And Plaintiffs assert that Ewing did not serve, execute, or timely return the search warrant, and that *Goodwin v. Metts*, 885 F.2d 157 (4th Cir. 1989), and *Sevigny v. Dicksey*, 846 F.2d 953 (4th Cir. 1988), clearly required Ewing to pursue readily available exculpatory information. (DE 107 at 12–13; *see* DE 91 at 21–23.) Defendants answer that *Anderson* was relevant to the state of the law, not controlling, and that Plaintiffs have not identified precedent clearly establishing the asserted right in the circumstances confronting the officers. (DE 110 at 8-9.)

Plaintiffs are correct that *Anderson* is not controlling and is factually distinguishable. The dogs there had escaped repeatedly and attacked people or animals, and the officers acted pursuant to a magistrate's pickup order. *See Anderson*, 2011 WL 4703104, at *2, *4. Those differences limit its value as a merits analog. But the case—and the Fourth Circuit's unpublished affirmance of qualified immunity—remains relevant background to whether Plaintiffs' proposed constitutional rule was

clearly established. It corroborates legal uncertainty, not the source of the governing constitutional rule.

**a. Ewing**

Ewing conducted the investigation, applied for the warrant, possessed the information Plaintiffs contend should have been disclosed, and participated directly in the October 6 encounter. Her qualified-immunity analysis must therefore address Plaintiffs' strongest version of the claim.

The law was clearly established that an officer could not knowingly or recklessly procure a warrant through a material falsehood or omission necessary to probable cause. *See Miller*, 475 F.3d at 627–32. But, as explained above, Plaintiffs' *Franks* theory fails on materiality: the corrected affidavit still established probable cause. Qualified immunity is, therefore, not being granted by treating warrant-integrity law as uncertain; the constitutional predicate for that particular claim is absent.

The remaining question must be framed more particularly than whether dogs are Fourth Amendment "effects" or whether unreasonable seizures are forbidden. *See Altman*, 330 F.3d at 203; *al-Kidd*, 563 U.S. at 742. The question is whether:

> In October 2022, precedent placed beyond debate that an officer violated the Fourth Amendment by obtaining a judicial warrant supported by probable cause to seize a dog believed to be vicious or dangerous, advising the owners that the warrant would be used if they did not bring the dog outside, refraining from entry into the home, and accepting the dog when an owner brought him outside - where the owners contend state law required a different form of judicial process and the officer later characterized the warrant as not served or executed.

Plaintiffs identify no controlling case clearly establishing that proposition. *Bumper* and *Trulock* establish that acquiescence to asserted warrant authority should not be

treated as voluntary consent. But they do not hold that a seizure is unconstitutional when independent warrant authority actually exists. *Hurwitz* confirms that the Fourth Amendment does not require service or delivery of the warrant in the manner Plaintiffs propose. 459 F.3d at 472. *Moses* concerns a warrantless home entry and therefore does not clearly govern an encounter in which a warrant had issued, and officers never entered the home. 540 F.3d at 269–70.

*Altman* held that privately owned dogs are protected effects and recognized that the public interest in control is lessened when a private owner is available to assert control. 330 F.3d at 203, 207. But *Altman* involved warrantless destruction of dogs running at large and did not hold that a dog may not be seized from an owner pursuant to a judicial warrant supported by probable cause. The materially different facts do not place Ewing's conduct beyond debate.

Nor do *Goodwin* and *Sevigny* clearly establish the unlawfulness of Ewing's conduct. *Goodwin* involved known exculpatory evidence that materially undermined the continued prosecution and was withheld from the prosecutor. 885 F.2d at 163–64. *Sevigny* involved failure to obtain readily available information that would have clarified and effectively exculpated the plaintiff before arrest. 846 F.2d at 957–58. Those cases do not require an officer to exhaust every potentially exculpatory lead. *See Wadkins*, 214 F.3d at 541. The information Plaintiffs say Ewing should have obtained here did not necessarily negate Rodriguez's report, identification, photographs, or the prior incident.

Finally, the issuing judicial officer's approval is not dispositive. A magistrate's approval does not immunize an officer who knowingly presents a plainly deficient

application. *See Malley v. Briggs*, 475 U.S. 335, 345–46 (1986). But judicial approval remains relevant to objective reasonableness. *See Messerschmidt v. Millender*, 565 U.S. 535, 546–47, 553–55 (2012). Here, the corrected application itself established probable cause.

Accordingly, to the extent any uncertainty remains concerning the interaction among § 47-3-750, the search warrant, and Ewing's manner of obtaining Beau without entering the house, Plaintiffs have not shown that existing precedent made the federal constitutional unlawfulness of her conduct beyond debate. Ewing is entitled to qualified immunity as an alternative ground on the dog-seizure claim.

**b. Mackin, Gulledge, and Heeren**

The analysis is narrower for Mackin, Gulledge, and Heeren. The Report states that they were not involved in the investigation, warrant application, or later municipal-court proceedings. Rather, their relevant participation was limited to the October 6 encounter. (DE 103 at 12 n.7.) Plaintiffs do not identify evidence that these officers supplied information for the warrant, knew of any alleged affidavit defect, or were responsible for deciding whether § 47-3-750(A) or (B) governed. (DE 107 at 3–13.)

At the residence, they accompanied Ewing after a judicial warrant had been issued. They did not enter the residence or physically remove Beau themselves. Plaintiffs identify no controlling authority in October 2022 requiring accompanying officers in those circumstances to reconstruct the investigation, independently reassess the warrant affidavit, or reject the judicial authorization because of the state-law procedural theory later advanced. Even assuming some aspect of the

October 6 detention or dog seizure was unconstitutional, Mackin, Gulledge, and Heeren are entitled to qualified immunity because the unlawfulness of their own conduct was not clearly established. *See Iqbal*, 556 U.S. at 676.

Plaintiffs' seventh objection is, therefore, overruled. The Court reaches the Report's ultimate qualified immunity disposition while treating *Anderson* as noncontrolling and evaluating Ewing separately from the accompanying officers.

**E. Remaining State Law Claims**

Plaintiffs do not make a specific objection to the Report's recommendation that the Court decline supplemental jurisdiction if the federal claims are dismissed. Instead, they state that they "do not abandon" arguments in their summary judgment opposition, including those concerning state law. (DE 107 at 13–14.) That general incorporation does not identify a particular error in the § 1367(c)(3) recommendation with sufficient specificity to require de novo review. *See Elijah*, 66 F.4th at 460–61; *see also Midgette*, 478 F.3d at 622. The Court has reviewed that recommendation for clear error and finds none.

Having granted summary judgment on all claims over which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims. 28 U.S.C. § 1367(c)(3). Those claims are dismissed without prejudice. Because the Court declines supplemental jurisdiction, it does not adopt the Report's alternative merits analysis of the South Carolina Tort Claims Act or decide whether the evidence would satisfy any state law exception to immunity.

### F. Conclusion

After review of the record, the applicable law, the Report, Plaintiffs' objections, the parties' summary judgment briefing, and Defendants' Reply, the Court ORDERS as follows:

1. Plaintiffs' objections (DE 107) are OVERRULED to the extent they seek a different disposition. As explained above, the Court agrees with portions of the first and second objections concerning the analytical treatment of seizure, consent, and § 47-3-750, but those points do not alter the disposition of the federal claims.

2. The Report and Recommendation (DE 103) is ADOPTED AS MODIFIED. The Court does not adopt the Report's categorical conclusions that Plaintiffs were not seized or that Beau was voluntarily surrendered, and it does not adopt the Report's alternative merits analysis of the state-law claims. The Court otherwise adopts the Report's recommended disposition for the reasons stated herein.

3. Defendants' Motion for Summary Judgment (DE 75) is GRANTED as to Plaintiffs' federal claims.

4. Plaintiffs' remaining state-law claims are DISMISSED WITHOUT PREJUDICE under 28 U.S.C. § 1367(c)(3).

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
September 25, 2026